[L.A. No. 30917. Nov. 30, 1978.]

EDWARD E. STOUT et al., Plaintiffs and Appellants, v.
THOMPSON TURNEY, Defendant and Appellant.

720

## Counsel

Luce, Forward, Hamilton & Scripps, C. Douglas Alford, Lee R. Rydalch and Louis E. Goebel for Defendant and Appellant.

Jenkins & Perry, James R. Sternberg and Daniel R. Salas for Plaintiffs and Appellants.

## Opinion

**MANUEL, J.**—Defendant Thompson Turney appeals from a judgment in the net amount of $62,200 plus costs entered following a jury verdict in an action for fraud in the sale of real property. Plaintiffs Edward E. and Claire T. Stout have filed a cross-appeal urging that they should have been awarded attorneys fees. For reasons to be stated below, we affirm the judgment in its entirety.

Plaintiffs brought this action against defendants Turney, William C. Bright, Eugene F. Norwood, Ronald H. Atteberry, and Rainbow Enterprises, a partnership of the four individual defendants. All individual defendants excepting Turney settled the claims against them and the matter proceeded to trial against defendant Turney individually. A jury verdict was entered against Turney in the amount of $92,200 compensatory and $50,000 punitive damages. The judgment entered on the verdict ordered that the amount assessed as compensatory damages be reduced by $30,000 to reflect the settlements of the other defendants. After a new trial was granted on the issue of punitive damages plaintiffs dismissed their claim therefor with prejudice. The appeal and cross-appeal herein are from the ensuing final judgment.

The instant controversy arises out of the purchase of a mobile home park by plaintiffs from defendant Turney and his associates. Although the testimony presented before the jury was in many respects conflicting, it suffices for present purposes to indicate that there was substantial evidence to the effect (1) that defendant prior to the purchase, had made certain representations to plaintiffs relative to the park's sprinkler-type sewage disposal system and its capacity to legally absorb additional effluent to be generated by eight additional mobile home spaces whose construction on the property was contemplated by plaintiffs; (2) that such representations were known by defendant to be untrue; and (3) that

subsequent to sale plaintiffs were required to purchase additional acreage for sprinkling purposes in order to continue operation of the existing park in compliance with standards set by the California Regional Water Quality Control Board (WQCB) and moreover were precluded from developing additional mobile home spaces on the property until such time, estimated at five years, as a public sewer system should be extended to it.

Considerable evidence, much of it quite complex, was also presented by plaintiffs on the question of the losses sustained by them as a result of the foregoing. This evidence, the bulk of which was given through the testimony of Mr. Stout himself, fell into three general categories. The first was concerned with demonstrating the loss of income suffered by plaintiffs as a result of being unable to construct the eight additional mobile home spaces as contemplated at the time of purchase; this was shown in two alternative ways—by a straight loss-of-income projection based upon the reasonable net income to be expected from the additional spaces over the term of five years,[1] and by a capitalization of said net income.[2] The second category of evidence was concerned with demonstrating the losses to be suffered as a result of having to buy and hold additional property for sprinkling purposes in order to operate the existing park in compliance with WQCB standards pending the installation of a public sewer system; this was also shown in two ways—by a straight computation of out-of-pocket costs on this account,[3] and by a capitalization of such costs.[4] The third and final category of valuation evidence consisted of a detailed summary of operations and projections comparing the return on investment over a six-year period of a mobile home park with the park's actual sewage disposal capacity (12,000 gallons per day) versus one with the capacity represented by defendant at the time of purchase (20,000 gallons per day).[5] No direct evidence was given

[1]Reasonable monthly rental per space was estimated at $85. This figure, multiplied by eight and projected over five years, yielded a sum of $40,800.

[2]Using this method, the reasonable monthly income figure was converted to a yearly basis per space ($1,020 per year) and capitalized at a factor of 7½ (which, according to Mr. Stout's testimony, was conservative for a mobile home park), from which sum ($7,650) was subtracted reasonable construction costs of $2,000 per space—yielding a total of $5,650 per space and $45,200 for eight spaces.

[3]These were comprised of the down payment of $10,000, monthly payments of $504 per month, plus taxes over the six-year period—or a total of $57,098.82.

[4]This approach considered the purchase of the additional property for sprinkling a "lost" investment of $75,000 which would otherwise return 8 percent, or $6,000 per year. Adding to this a projection of property taxes to be paid on the property over the period, Mr. Stout estimated a total "loss" of approximately $47,000.

[5]The difference over six years was estimated at $94,390.

by either party, however, of the actual fair market value of the park as received at the time of purchase.

 ██ Defendant Turney's principal contention—and the sole issue of consequence involved in this appeal[6]—is whether the trial was tainted by prejudicial error as a result of an instruction given by the court on the matter of assessment of damages. The instruction in question provided as follows: "One defrauded in the purchase of property is entitled to recover any damage arising from the particular transaction measured as follows: [1] Amounts actually and reasonably expended in reliance upon the fraud, over and above the purchase price; [2] An amount which would compensate the defrauded party for loss of use of the property to the extent that any such loss was proximately caused by the fraud; [3] Where the defrauded party has been induced by reason of the fraud to purchase or otherwise acquire the property in question, an amount which will compensate him for any loss of profits or other gains which were reasonably anticipated and would have been earned by him from the use or sale of the property had it possessed the characteristics fraudulently attributed to it by the party committing the fraud, provided that lost profits from the use of the property shall be recoverable only if and only to the extent that all of the following apply: 1. The defrauded party acquired the property for the purpose of using or reselling it for a profit; 2. The defrauded party reasonably relied on the fraud in entering into the transaction and in anticipating profits from the subsequent use or sale of the property; 3. Any loss of profits for which damages are sought

---

[6]In his opening brief defendant Turney also asserted that the record contained no substantial evidence that he or any of his partners had the requisite intent to deceive. This contention has not been pursued, and we can ignore it for that reason. In any event the record, reasonably viewed in the light most favorable to the prevailing parties, clearly indicates that one of Turney's partners had knowledge of the WQCB resolution limiting sewage capacity and thought he had so advised Turney, who himself delivered the said resolution to the contractor building the park. There being no suggestion in the record that the acts of any of the partners in this respect were beyond the scope of his authority (see Corp. Code, § 15013; cf. Civ. Code, § 2338), it is manifest that the record provides ample support for the implied finding of guilty knowledge and intent to deceive. All partners in a partnership are bound by the fraud of one or any of them acting within the scope of his authority in a partnership transaction with an innocent third party, and all are responsible for the injury occasioned thereby. (*Stewart* v. *Levy* (1868) 36 Cal. 159, 165; *Zemelman* v. *Boston Ins. Co.* (1970) 4 Cal.App.3d 15, 18 [84 Cal.Rptr. 206]; see 6 Witkin, Summary of Cal. Law (8th ed. 1973) Partnership, § 34, p. 4284.)

Defendant also complains that the instruction on burden of proof (BAJI No. 2.60) was ambiguous and misleading insofar as it provided that misrepresentation could be shown by "concealment or nondisclosure." Mere concealment or nondisclosure, he urges, cannot sustain a cause of action for fraud in the absence of a fiduciary relationship. Civil Code section 1572, however, indicates that actual fraud by a party to a contract includes " . . . 3. The suppression of that which is true, by one having knowledge or belief of the fact; . . . ." (See also *Snelson* v. *Ondulando Highlands Corp.* (1970) 5 Cal.App.3d 243, 251 [84 Cal.Rptr. 800, 85 Cal.Rptr. 806].)

under this paragraph have been proximately caused by the fraud and the defrauded party's reliance on it."

The foregoing instruction was clearly an adaptation of the provisions of Civil Code section 3343, as amended in 1971—which provisions we set forth in full in the margin.[7] As will be seen from a comparison of the statutory language with that of the instruction, the latter significantly omits that portion of the first paragraph of the former which deals with so-called "out of pocket loss" and proceeds directly to the matter of consequential or "additional" damages.[8] In so doing, defendant Turney contends, the instruction effectively withdrew from the jury the fundamental consideration applicable under California law in the assessment of damages for fraud in the sale of property and erroneously substituted therefor what amounts to a "benefit of the bargain" standard. The error, he urges, was clearly prejudicial and requires reversal of the judgment in its entirety.

---

[7]"(a) One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction, including any of the following:

"(1) Amounts actually and reasonably expended in reliance upon the fraud.

"(2) An amount which would compensate the defrauded party for loss of use and enjoyment of the property to the extent that any such loss was proximately caused by the fraud.

"(3) Where the defrauded party has been induced by reason of the fraud to sell or otherwise part with the property in question, an amount which will compensate him for profits or other gains which might reasonably have been earned by use of the property had he retained it.

"(4) Where the defrauded party has been induced by reason of the fraud to purchase or otherwise acquire the property in question, an amount which will compensate him for any loss of profits or other gains which were reasonably anticipated and would have been earned by him from the use or sale of the property had it possessed the characteristics fraudulently attributed to it by the party committing the fraud, provided that lost profits from the use or sale of the property shall be recoverable only if and only to the extent that all of the following apply:

"(i) The defrauded party acquired the property for the purpose of using or reselling it for a profit.

"(ii) The defrauded party reasonably relied on the fraud in entering into the transaction and in anticipating profits from the subsequent use or sale of the property.

"(iii) Any loss of profits for which damages are sought under this paragraph have been proximately caused by the fraud and the defrauded party's reliance on it.

"(b) Nothing in this section shall do either of the following:

"(1) Permit the defrauded person to recover any amount measured by the difference between the value of property as represented and the actual value thereof.

"(2) Deny to any person having a cause of action for fraud or deceit any legal or equitable remedies to which such person may be entitled."

[8]The instruction also added the words "over and above the purchase price" to the language of subdivision (a)(1) of the statute. Subdivision (b) of the statute was wholly omitted.

Before addressing ourselves directly to this contention we believe it appropriate to undertake a brief review of the recent history and evolution of California law in this area. ■ For at least the past 43 years—since the initial enactment of section 3343 in 1935[9]—the cornerstone of the California standard for the assessment of damages for fraud in property transactions has been the so-called "out-of-pocket" rule. This rule, against which is traditionally contrasted the so-called "benefit-of-the-bargain" measure, is directed to restoring the plaintiff to the financial position enjoyed by him prior to the fraudulent transaction, and thus awards the difference in actual value at the time of the transaction between what the plaintiff gave and what he received. The "benefit-of-the-bargain" measure, on the other hand, is concerned with satisfying the expectancy interest of the defrauded plaintiff by putting him in the position he would have enjoyed if the false representation relied upon had been true; it awards the difference in value between what the plaintiff actually received and what he was fraudulently led to believe he would receive. Of the two measures the "out-of-pocket" rule has been termed more consistent with the logic and purpose of the tort form of action (i.e., compensation for loss sustained rather than satisfaction of contractual expectations) while the "benefit-of-the-bargain" rule has been observed to be a more effective deterrent (in that it contemplates an award even when the property received has a value equal to what was given for it.) (See e.g., Prosser, Torts (4th ed. 1971) § 110, pp. 733-734, and authorities there cited; Comment, *Deceit Damages in California: Old Problem—New Departure?* (1974) 14 Santa Clara Law. 325, 328-338; Annot. (1967) 13 A.L.R.3d 875, 883-884.)

The Legislature's decision to adopt the "out-of-pocket" rather than the "benefit-of-the-bargain" rule as the foundation of its standard—and thus to join what appears to be the minority position (see Prosser, Torts, *supra,* § 110, pp. 733-734; see generally, Annot., *supra,* 13 A.L.R.3d 875)—has not prevented the courts from in many cases fashioning relief appropriate to particular circumstances in which a limitation to strict out-of-pocket recovery would lead to injustice. Thus, although this court early held that the rule of section 3343 set forth the *exclusive* standard for damages in fraudulent property transactions (*Bagdasarian* v. *Gragnon* (1948) 31 Cal.2d 744, 762, 763 [192 P.2d 935]), a clear exception has emerged in

---

[9]The 1935 statute provided: "One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction. [¶] Nothing herein contained shall be deemed to deny to any person having a cause of action for fraud or deceit any legal or equitable remedies to which such person may be entitled."

cases involving fraudulent *fiduciaries.* (See *Savage* v. *Mayer* (1949) 33 Cal.2d 548, 551 [203 P.2d 9]; *Walsh* v. *Hooker & Fay* (1963) 212 Cal.App.2d 450, 458-462 [28 Cal.Rptr. 16].) The courts also gave a liberal construction to the "additional damage" language of the 1935 statute (see fn. 9, *ante*), which was held to comprehend actual expenditures of time and money in reliance on a misrepresentation, including rental of suitable premises, and damage to other property. (See, e.g., *Burkhouse* v. *Phillips* (1971) 18 Cal.App.3d 661, 665 [96 Cal.Rptr. 197]; *Hartong* v. *Partake, Inc.* (1968) 266 Cal.App.2d 942, 969 [72 Cal.Rptr. 722]; *Clar* v. *Board of Trade* (1958) 164 Cal.App.2d 636, 651-652 [331 P.2d 89].) It also became settled under the 1935 statute that anticipated revenue or profit, although not a proper measure of damages or a proper component of "additional" damages, could still be considered in determining the value of the property received. (See *Eatwell* v. *Beck* (1953) 41 Cal.2d 128, 134 [257 P.2d 643].) In certain other cases principles of constructive trust, unjust enrichment, and quasi-contract were invoked to permit recovery in the absence of relevant proof of market value. (See *Ward* v. *Taggart* (1959) 51 Cal.2d 736, 741-742 [336 P.2d 534]; *Coleman* v. *Ladd Ford Co.* (1963) 215 Cal.App.2d 90, 92-94 [29 Cal.Rptr. 832].)

It was in the context of the foregoing course of judicial evolution that the 1971 Legislature addressed itself to the amendment of section 3343. Also apparent to the lawmakers was the fact that certain logical inconsistencies existed between the judicial application of the 1935 statute and that of other enactments dealing with the measure of damages for fraud. Thus, in fraud cases not involving the "purchase, sale or exchange of property" lost profits were regularly awarded under the general tort recovery statute, Civil Code section 3333 (see, e.g., *Sutter* v. *General Petroleum Corp.* (1946) 28 Cal.2d 525, 534 [170 P.2d 898, 167 A.L.R. 271]). Ironically, such damages were also recoverable in simple breach of contract cases under Civil Code section 3300, the general contract recovery statute, even if the contract in question related to the "purchase, sale or exchange of property" (see e.g., *Tomlinson* v. *Wander Seed & Bulb Co.* (1960) 177 Cal.App.2d 462, 472-473 [2 Cal.Rptr. 310]; *Mann* v. *Jackson* (1956) 141 Cal.App.2d 6, 12 [296 P.2d 120]). A final incongruity was added with the 1963 enactment of the Commercial Code, which in section 2721 permitted full "benefit-of-the-bargain" recovery to defrauded persons subject to its provisions.[10] (See generally Comment, *Deceit*

[10]In the Legislative Counsel's comment to section 2721 it was observed that the purpose of the section, "according to the [Uniform Commercial Code] comments, is to make the remedy of buyer or seller where there is fraud as broad as, and coextensive with, the remedies where fraud is absent. This section would perhaps change the rule of Civil Code § 3343 stating the so-called 'out of pocket' rule . . . and substitute or permit the

*Damages in California: Old Problem—New Departure? supra,* 14 Santa
Clara Law. 325, 345-347.)

The Legislature's response took the form of an extensive amendment
to and expansion of that portion of the former section dealing with
consequential or "additional" damages. Two basic changes were made.
First, language was added to incorporate existing case law relating to such
damage arising from lost time and money reasonably expended in
reliance. (Subds. (a)(1) and (a)(2).) Second, and more significantly, the
section was amended to permit the recovery of lost profits as a component
of "additional" damage. (Subds. (a)(3) and (a)(4).) Care was taken,
however, to emphasize that the above amendments were not to be
interpreted as the adoption of a "benefit-of-the-bargain" standard, which
would of course be applicable regardless of whether the subject property
was income- or *profit*-producing.[11] To this end it was specifically provided
that "Nothing in this section shall . . . [p]ermit the defrauded person to
recover any amount measured by the difference between the value of
property as represented and the actual value thereof." (Subd. (b)(1).)

 It is against this background that we address defendant Turney's
contention. As above noted he urges that the trial court, by instructing the
jury according to that portion of section 3343, as amended in 1971, which
deals with consequential or "additional" damages—and by omitting from
its instruction that portion of the amended statute which sets forth the
basic "out-of-pocket" rule—thereby withdrew from the jury the funda-
mental inquiry which should have concerned it under California law and
substituted therefor a "benefit-of-the-bargain" measure of damages. We
do not agree.

Although the fraudulent acts here in question took place prior to 1971,
it is clear that the amended version of section 3343, which was in effect at
the time of trial, is here applicable. (*Glendale Fed. Sav. & Loan Assn.* v.
*Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 145, fn. 13 [135
Cal.Rptr. 802]; see *Feckenscher* v. *Gamble* (1938) 12 Cal.2d 482, 499-500
[85 P.2d 885]; *Tulley* v. *Tranor* (1878) 53 Cal. 274; *Standard Oil Co. of
California* v. *United States* (9th Cir. 1939) 107 F.2d 402, 418; *United States*

---

so-called, 'loss of bargain' rule . . . ." (Sixth Progress Rep. to Leg. by Sen. Fact Finding
Com. on Judiciary (1959-1961), pt. 1, The Uniform Commercial Code, p. 63.)

[11]The amended statute permits recovery of lost profits for a defrauded seller
(subd. (a)(3)) as well as a defrauded buyer (subd. (a)(4)). With respect to the latter it is
specifically provided that lost profits shall be recovered only if (i) the property is acquired
for use or resale at a profit, (ii) the buyer reasonably relied on the fraud in entering into
the transaction and anticipating profit, *and* (iii) the loss of profits was proximately caused
by reliance on the fraud. (See fn. 7, *ante.*)

v. *Standard Oil Co. of California* (S.D.Cal. 1937) 21 F.Supp. 645, 657-662; see also *Hartman* v. *Shell Oil Co.* (1977) 68 Cal.App.3d 240, 248 [137 Cal.Rptr. 244]; *Coast Bank* v. *Holmes* (1971) 19 Cal.App.3d 581, 596 [97 Cal.Rptr. 30]; cf. *Helm* v. *Bollman* (1960) 176 Cal.App.2d 838, 842-843 [1 Cal.Rptr. 723].) Thus, the question here presented is whether the trial court was guilty of error, on the record here before us, in instructing only on that portion of section 3343 which deals with consequential or "additional" damage and omitting that portion of the section which deals with so-called "out-of-pocket" loss.

This question, we believe, must be answered in the negative. A similar contention was raised and rejected in the case of *Hartman* v. *Shell Oil Co., supra,* 68 Cal.App.3d 240. There plaintiff, relying on defendant's misrepresentation that he would be "transferred" to certain larger gasoline station premises if defendant was able to purchase them and he purchased certain smaller premises nearby, purchased the smaller station and diligently set about building up the business. When defendant Shell purchased the larger station but refused to "transfer" plaintiff to it, the latter brought suit to recover lost profits arising from the opening of the larger Shell station and the competition resulting therefrom. On appeal defendant contended that the trial court had erred by instructing the jury on lost profits rather than "out-of-pocket" loss measured by a comparison of the market value of the smaller station with the consideration paid by plaintiff. This, Shell urged (as defendant Turney urges here), was a "benefit-of-the-bargain" instruction and was thus inconsistent with California law and section 3343.

■ The Court of Appeal did not agree. After reviewing the evolution of California law regarding property transaction fraud damages up to the passage of the 1971 amendments, it pointed out that defendant was confusing a "benefit-of-the-bargain" instruction—which is forbidden by case law as well as by the post-1971 version of section 3343—with a loss-of-profits instruction, which is specifically permitted by the amended statute.[12] "The cases cited," the Court of Appeal went on, "the arguments made concerning Civil Code section 3343 limitations are simply not relevant to post-1971 proceedings, where profits are the claimed loss. Civil Code section 3343 as amended, in so many words, authorizes

---

[12]As pointed out above, a loss-of-profits standard is not the same as a "benefit-of-the-bargain" standard. The former applies only where there are reasonably anticipated "profits or other gains" (Civ. Code, § 3343, subds. (a)(3) and (a)(4)). Such is not normally the case, for instance, when property is purchased for residential purposes. (But see Comment, *Deceit Damages in California: Old Problem—New Departure?, supra,* 14 Santa Clara Law. 325, 349-350.)

recovery of lost profits. Hartman was therefore entitled, on the facts presented to the jury to recover as damages 'for any loss of profit or other gains which were reasonably anticipated and would have been earned by him from the use or sale of the property had it possessed the characteristics fraudulently attributed to it . . .' To recover under the amended statute, Hartman must have acquired the property for use (subd. (a)(4)(i)), and have reasonably relied upon the fraudulent representation (subd. (a)(4)(ii)), and the loss must be the proximate result of the fraud (subd. (a)(4)(iii)). Shell's first arguments appear to ignore the express language of Civil Code section 3343 as amended." (68 Cal.App.3d at p. 247;[13] see also *Glendale Fed. Sav. & Loan Assn.* v. *Marina View Heights Dev. Co., supra,* 66 Cal.App.3d 101, 145.)

 The record in the instant case clearly reflects that plaintiffs sought to ground their showing of damage not in the difference between the market value of the purchased property and the consideration given by them in order to purchase it but rather in the "additional" or consequential losses which they sustained on account of the fraud. This they did by showing (1) the profits lost by them as a result of being precluded from having the eight additional mobile home spaces, and (2) the losses sustained as a result of having to buy and hold additional property for sprinkling purposes. These were permissible elements of damage under the statute as amended.[14]

We find nothing in section 3343 as amended which requires that a plaintiff show "out-of-pocket" loss (i.e., an amount by which the consideration paid exceeded the value of the property received) in order to be entitled to any recovery for fraud in a property transaction. The statute awards damage for traditional "out-of-pocket" loss "*together with* any additional damage arising from the particular transaction, including . . . ." If a plaintiff shows no traditional "out-of-pocket" loss, that component of the award is zero. however, he goes on to show consequential or "additional"

[13]The *Hartman* court went on to hold that the lost profits portion of section 3343 was applicable even though the fraudulent representations in question did not concern the physical characteristics of the property purchased. This issue is not present in the instant case and we do not address it. (See generally Comment, *Deceit Damages in California: Old Problem—New Departure?, supra,* 14 Santa Clara Law. 325, 350-351.)

[14]It is to be noted that the amount of compensatory damages awarded ($92,200) is the sum of (1) the amount estimated by plaintiff under the capitalization method to be his loss resulting from his inability to add the eight spaces ($45,200—see fn. 2, *ante*) and (2) the amount estimated under the same method to represent his costs arising out of the necessity to buy and hold additional land for sprinkling purposes (approximately $47,000—see fn. 4, *ante*).

damage of the type prescribed by the statute, the amount which he so demonstrates is recoverable. The only effect of his failure to show traditional "out-of-pocket" loss is the necessity that a nullity be added to the amount shown to have been sustained as consequential damages.[15]

■ In view of all of the foregoing we think it clear that the trial court was not guilty of error in instructing the jury as it did. There being no direct evidence of market value in the record, and plaintiff having essentially foregone any element of damage on this basis, the trial court properly limited the jury's deliberations to the issues presented in the area of consequential or "additional" damage. Defendant's fundamental contention must therefore be rejected.

To the extent it is inconsistent herewith, the case of *Pepper* v. *Underwood* (1975) 48 Cal.App.3d 698 [122 Cal.Rptr. 343] is disapproved.

■ Plaintiffs claim on their cross-appeal that the trial court erroneously refused to allow them attorney's fees under the provisions of Civil Code section 1717, which provides that such fees may be awarded in "any action on a contract." A tort action for fraud arising out of a contract is not, however, an action "on a contract" within the meaning of this section. (*Walters* v. *Marler* (1978) 83 Cal.App.3d 1, 27-28 [147 Cal.Rptr. 655]; *McKenzie* v. *Kaiser-Aetna* (1976) 55 Cal.App.3d 84, 89-90 [127 Cal.Rptr. 275].)

The judgment is affirmed. Each party shall bear his own costs on appeal.

Bird, C. J., Tobriner, J., Mosk, J., Clark, J., Richardson, J., and Newman, J., concurred.

---

[15]Defendant suggests that the property received might have had a market value *in excess* of the consideration given, and that any such excess should be *offset against* any consequential damages shown. There are two answers to this. First, we find no support for the proposition that one guilty of fraud in the sale of property is entitled to positive recovery against the person defrauded if the property received happens to have a market value in excess of the price paid. Second, and even if such a proposition were tenable, the burden would be on the *defendant* to demonstrate such excess value. Here defendant showed only that he had made offers to rescind. He did not show, through expert testimony or otherwise, that such offers were justified by a market value in excess of the price paid.