William O. WALKER and Z of San Diego, Ltd., Appellants and Cross-Appellees

v.

KFC CORPORATION and Heublein, Inc., Appellees and Cross-Appellants.

Nos. 81–5600, 81–5639.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 10, 1982.

Decided Feb. 22, 1984.

Robert E. Currie, Jon D. Anderson, Latham & Watkins, Newport Beach, Cal., Donald McGrath, II, Sullivan, Delafield, McGrath & McDonald, San Diego, Cal., for appellants and cross-appellees.

Stanley H. Williams, P.C., John Sobieski, P.C., Peter O. Israel, P.C. Margot A. Metzner, Hufstedler, Miller, Carlson & Beardsley, Los Angeles, Cal., Gerald L. McMahon, Seltzer, Caplan, Wilkins & McMahon, San Diego, Cal., for appellees and cross-appellants.

Before TANG and NORRIS, Circuit Judges, and EAST,* District Judge.

NORRIS, Circuit Judge:

KFC Corporation ("KFC"), a subsidiary of Heublein, Inc., is known principally for its franchised "Kentucky Fried Chicken" chain of fast-food restaurants. It also franchises Zantigo Mexican-American restaurants. In 1976, KFC entered into franchise agreements designating a limited partnership, Z of San Diego ("Z"), as Zantigo res-

---

* The Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

taurant franchisee for the San Diego area. William O. Walker is the principal shareholder of the corporation that acts as general partner of Z.

This litigation is the result of disputes relating to the franchise agreements. At trial, the jury awarded Z and Walker damages in the amount of $1,214,989 on theories of promissory estoppel and fraudulent concealment. The jury found in favor of KFC on its counterclaim against Walker and Z for trade debts in the amount of $117,778.19 incurred for franchise fees and restaurant equipment and supplies. Both sides appeal. We affirm the judgment against Walker and Z on KFC's counterclaim for trade debts, but reverse the judgment awarding damages to Z on its promissory estoppel and fraud claims.

I

*KFC's Counterclaim*

Walker and Z, the plaintiffs below, appeal the judgment against them on KFC's counterclaim for trade debts on the ground that the district court erred in refusing to admit evidence showing that they were released from a substantial part of their liability for trade debts under the doctrines of novation and release of sureties. Their offer of proof related to the sale by Z of two Zantigo restaurants to Malcolm Elliott. The sale was effected by a "Transfer of Interest Agreement" (the Agreement) to which KFC was a party. Walker and Z claim that the Agreement constituted a novation because KFC knowingly substituted Elliott as trade debtor, thereby intentionally releasing Walker and Z from their obligations.

■ We agree with the district court that the evidence proffered by plaintiffs was inadmissible on the issue of novation. A novation occurs when a creditor substitutes a new debtor in place of the original debtor with the intent to release the latter

from the obligation. *Combs v. Jameson,* 236 Ky. 733, 33 S.W.2d 686 (1930); *Kushner v. Knopf,* 227 Ky. 369, 13 S.W.2d 271 (1929).[1] Although the Agreement provided that Elliott assumed Z's obligations to KFC, it also expressly provided that Z and Elliott "jointly and severally promise[d]" to pay these obligations. The Agreement thus showed a clear intent to add Elliott as a new obligor, but not to release Z as the original obligor. As the court stated in *National Bank of Lima v. Deaton,* 279 Ky. 606, 609, 131 S.W.2d 495, 497 (1939),

> ■n order to constitute a novation such as will release an obligation, it is necessary that there be a new contract which, by agreement of the parties, extinguishes the existing contract or obligation, and to this end, it must appear that the creditor unconditionally released the original obligor and accepted the third person in his stead.

■ Plaintiffs argue that notwithstanding the unambiguous language of the written Agreement, the jury could have inferred from the circumstances of the transaction and the conduct of the parties thereafter that KFC intended to release Z from liability for the trade debts. Acknowledging that such an intent must be shown to prove a novation, they cite as extrinsic evidence of that intent the fact that KFC accepted new promissory notes from Elliott and granted him an extension of time to repay the debts. While it is true that the creditor's intent to release the original debtor may be inferred from circumstantial evidence, *Combs v. Jameson,* 33 S.W.2d at 687; *Kushner v. Knopf,* 13 S.W.2d at 272, we agree with the district court that here the Agreement unambiguously provided that Z continued to be a debtor. In such a case, extrinsic evidence of the intent of the parties is inadmissible under Kentucky's parol evidence rule. *O.P. Link Handle Co. v. Wright,* 429 S.W.2d 842, 847 (Ky.1968); *G.T. O'Bryan v. Massey-Ferguson, Inc.,* 413 S.W.2d 891, 893 (Ky.1966).

1. The district court ruled that the Parole Evidence Rule of Kentucky applied. The franchise documents provide that they shall be governed by and interpreted according to Kentucky law.

Otherwise, the trial court applied California law. Neither side objects on appeal to the district court's choice of law rulings.

Even had the written agreement been ambiguous, it would not have been prejudicial error for the trial court to exclude the proffered evidence of the new promissory notes executed by Elliott and of KFC's agreement to alter the method and timing of payment because this evidence is insufficiently probative of KFC's intent to release Z as an obligor. Absent other evidence of intent, "the taking of a note from one who has assumed the debt is not a novation releasing the old debtor ...." *Truscon Steel Co. v. Thirlwell Electric Co.,* 265 Ky. 414, 418, 96 S.W.2d 1023, 1026 (1936). Nor does a reasonable extension of time, standing alone, evince an intent to release a joint obligor. *Robert Simmons Construction Co. v. Powers Regulator Co.,* 390 S.W.2d 901, 904 (Ky.1965).

The district court also correctly ruled that plaintiffs could not introduce evidence purporting to show they were released from liability as sureties when KFC consolidated Elliott's obligations and extended his time for payment. Neither Walker nor Z ever became sureties for Elliott. Under the express terms of the Agreement, Z remained jointly and severally liable with Elliott to KFC. Walker was a surety for Z, not for Elliott. He "unconditionally" guaranteed Z's obligations under the equipment purchase agreement and remained as a surety for Z under the Elliott Agreement. Walker explicitly agreed that even if Z and KFC changed the method or timing of payment of Z's debts, he would "remain bound" as a surety for Z until all its obligations were satisfied. That, however, does not make him a surety of Elliott.

We affirm the judgment against Walker and Z on KFC's counterclaim.

## II

### Promissory Estoppel

The jury found that KFC did not breach its contract in any way, but also found KFC liable on promissory estoppel. KFC argues in appealing the denial of its motion for judgment n.o.v. that the doctrine of promissory estoppel is inapplicable as a matter of law because all the promises made by KFC were bargained for and supported by consideration.[2]

In challenging the promissory estoppel verdict, KFC relies on *Youngman v. Nevada Irrigation Dist.,* 70 Cal.2d 240, 449 P.2d 462, 74 Cal.Rptr. 398 (1969), and *Healy v. Brewster,* 59 Cal.2d 455, 380 P.2d 817, 30 Cal.Rptr. 129 (1963), as stating applicable California law on the issue. In *Youngman,* the California Supreme Court stated that

[t]he purpose of [the doctrine of promissory estoppel] is to make a promise binding, under certain circumstances, without consideration in the usual sense of something bargained for and given in exchange. If the promisee's performance was requested at the time the promisor made his promise and that performance was bargained for, the doctrine is inapplicable.

*Healy v. Brewster,* (1963) 59 Cal.2d 455, 463 [380 P.2d 817, 30 Cal.Rptr. 129] ... explained: "Under such circumstances, the only reliance which can make the promisor's failure to perform actionable is the promisee's doing what was requested. If that reliance was detrimental, it would constitute consideration. If it was not detrimental, it would not constitute consideration; and since detrimental reliance is an essential feature of promissory estoppel, that doctrine could not be invoked to make the promisor liable.... In other words, when the promisee's re-

---

**2.** *Signal Hill Aviation Co. v. Stroppe,* 96 Cal. App.3d 627, 158 Cal.Rptr. 178 (1979), relied on by Walker and Z to support their contention that KFC's position on appeal is inconsistent with its position at trial, is inapposite. In *Stroppe,* the defendant at trial maintained that his promise to assign a lease upon which plaintiff relied had been gratuitous. On appeal of a promissory estoppel verdict, the defendant argued not that his promise was gratuitous, but that it was supported by consideration. 96 Cal.App.3d at 638, 158 Cal.Rptr. 178. KFC, in contrast to the defendant in *Stroppe,* has not presented an inconsistent theory on appeal. It has throughout maintained that its representations were not promises, but if they were promises, they were supported by bargained-for consideration. *See Walker v. KFC Corp.,* 515 F.Supp. 612, 616 (S.D.Cal.1981).

liance was bargained for, the law of consideration applies; and it is only where the reliance was unbargained for that there is room for application of the doctrine of promissory estoppel.

*Youngman v. Nevada Irrigation District,* 70 Cal.2d at 249–250, 449 P.2d 462, 74 Cal.Rptr. 398 (citations omitted).

Plaintiffs concede that "promissory estoppel is an *additional* method developed by the courts to enforce promises that do not meet the consideration requirement of a contract. If bargained for consideration exists, then the promises can be enforced as part of a contract and promissory estoppel is unnecessary." Appellants' and Cross-Appellees' Reply and Answering Brief at 9 (emphasis in original). They argue, however, that KFC made promises outside the written contracts which were not supported by bargained for consideration and therefore could have formed the basis for the jury's finding that plaintiffs have proved all the elements required to establish promissory estoppel. Specifically, plaintiffs contend that KFC promised to develop a nationwide system of Zantigo restaurants, to promote the Zantigo restaurants on television, and to provide equipment financing for Zantigo franchisees. Because none of these alleged promises is mentioned in any of the written option or franchise agreements,[3] plaintiffs claim the doctrine of promissory estoppel is brought into play. They argue that they relied upon these promises to their detriment in entering into three long term leases and spending over $230,000 in establishing, promoting and developing the Zantigo restaurants in San Diego.

Plaintiffs' reliance on both promissory estoppel and conventional breach of contract theories puts us on uncharted waters. What is novel about the question presented is that the performance plaintiffs claim satisfies the detrimental reliance requirement of the doctrine of promissory estoppel also satisfies the consideration requirement for making KFC's written promises binding.

This becomes clear upon examination of the written contracts.

The written contracts consisted of option agreements which gave plaintiffs the right to enter into franchise agreements with respect to specific sites in San Diego. As conditions precedent to the exercise of an option, plaintiffs were required to select an appropriate site, obtain the leaseholder ownership of that site, submit building plans for KFC's approval, order supplies and equipment for the commencement of operations, complete construction of the restaurant facility, and complete a KFC training program. Upon exercise of the option, the franchisee was required by the terms of the franchise agreement to use its best efforts to promote and develop the business of the restaurant and to market the Zantigo products approved by KFC. Thus, in entering into leases and spending valuable time as well as money in establishing and developing Zantigo restaurants in San Diego—the very acts which support the detrimental reliance element of plaintiffs' promissory estoppel claim—plaintiffs were providing the consideration that induced KFC to enter into the written agreements.

To satisfy California law requirements for invoking the doctrine of promissory estoppel as spelled out in *Youngman* and *Healy,* plaintiffs are forced into the position of arguing that they performed to their detriment in reliance upon promises made outside the written agreements, and that the performance was not bargained for. In light of the fact that plaintiffs' claim of detrimental reliance is founded on the very acts which induced KFC to enter into the written agreements, we find plaintiffs' argument that their performance in leasing space and opening Zantigo restaurants was not bargained for to be totally unpersuasive. The essence of KFC's business was franchising Zantigo restaurants. To say that in making promises to promote Zantigo restaurants on a national basis, including national television advertising, and to pro-

---

**3.** Plaintiffs do not contend that any of these alleged promises by KFC were incorporated in

its written agreements with plaintiffs.

vide equipment financing for franchisees, KFC was not bargaining with franchisees to induce them to open Zantigo restaurants is to ignore business reality. What was the bargain if not that the franchisor would provide benefits to the franchisee if the franchisee assumed the responsibility for operating individual Zantigo restaurants. That was, in a word, the deal. The performance by plaintiffs was bargained-for and the fact that some of the promises that induced that performance were made outside the written agreements does not change the analysis. As Walker himself testified (RT at 422), he was induced to enter into the franchise relationship by KFC promises allegedly made outside the written agreements as well as by those made in writing.

We see no principled basis for distinguishing this case from *Youngman.* In *Youngman,* the plaintiff alleged that he was orally promised an annual merit increase in pay. The California Supreme Court held that the complaint stated a cause of action for breach of contract, but not promissory estoppel, because the plaintiff's performance was requested and bargained for at the time the promise was made. The court reasoned,

> It seems clear ... that the district's promise ... was part of the bargain under which Youngman entered the district's employ. By remaining in his position ... he performed his part of the bargain and rendered the consideration called for by the employment contract. There is no occasion, therefore, to rely upon the doctrine of promissory estoppel, *which is necessary only to supply consideration for a promise when no actual consideration was given by the promisee.*

*Youngman v. Nevada Irrigation District,* 70 Cal.2d at 250, 449 P.2d 462, 74 Cal.Rptr. 398 (emphasis added).

Our conclusion that the doctrine of promissory estoppel is inapplicable to the facts of this case is reenforced by more recent California cases which stress that the promissory estoppel doctrine is limited "to cases where no benefit flows to the promisor." *Signal Hill Aviation Co. v. Stroppe,* 96 Cal. App.3d 627, 637, 158 Cal.Rptr. 178 (1979); *see also Raedeke v. Gibraltar Savings & Loan Assn.,* 10 Cal.3d 665, 673–674, 517 P.2d 1157, 111 Cal.Rptr. 693 (1974). Here, benefits would obviously flow to KFC as franchisor if it successfully induced franchisees such as plaintiffs to establish and operate the Zantigo restaurants.

In sum, either KFC was in breach of contract or it was not. The jury decided it was not. That should be the end of the matter. Promissory estoppel is not a doctrine designed to give a party to a negotiated commercial bargain a second bite at the apple in the event it fails to prove a breach of contract.

We hold that the district court erred in denying KFC's motion for judgment n.o.v. on the promissory estoppel issue.[4]

### III

### *Fraudulent Concealment*

The jury found that KFC made no intentional or negligent misrepresentations and made no promises without intent to perform. The jury found KFC liable, however, on a theory of fraudulent concealment of facts. The district court denied KFC's motion for a new trial based upon error in the jury instructions on fraudulent concealment. 515 F.Supp. at 620–621. The district court also denied .KFC's motion for judgment n.o.v. on the fraudulent concealment issue on the basis of evidence that KFC had failed to tell plaintiffs about cer-

---

4. Because we set aside the district court verdict based upon promissory estoppel on the ground that as a matter of law the representations of KFC were supported by bargained for consideration, we need not rule on KFC's contention that under applicable Kentucky law, contract integration is a question of law and that, consequently, the court should not have allowed the jury to consider parol evidence, either for the purpose of modifying the contract or for the purpose of binding KFC on a promissory estoppel theory. Nor need we review the evidence to determine whether KFC's representations were in fact promises or merely statements, as KFC contends.

tain changes in plans for the development of a national Zantigo franchise. *Id.* at 617–618. KFC argues on appeal that the jury was erroneously instructed that KFC had a duty to disclose all known material facts because of its contractual obligation of good faith and fair dealing and that plaintiffs proved no facts giving rise to a duty to disclose.

## A

### Jury Instructions

The challenged jury instruction on fraudulent concealment reads as follows:

To establish fraud and deceit based upon concealment of a fact or facts, plaintiff must establish each of the following elements:

First: The defendant must have concealed or suppressed a material fact;

Second: The defendant must have been under a duty to disclose the fact to the plaintiff;

Third: The defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiffs;

Fourth: The plaintiffs must have been unaware of the fact and would not have acted as he or they did if he had known of the concealed or suppressed fact;

Fifth: And, finally, as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.

Except as you may otherwise be instructed, where material facts are known to one party and not to the other, failure to disclose them is not actionable fraud unless there is some relationship between the parties which gives rise to a duty to disclose such known facts.

A duty to disclose a known fact arises out of the obligation of good faith and fair dealing in the performance of a contract. You are instructed that plaintiffs and defendants each owed such a duty to the other in the performance of their respective obligations under the franchise and option agreements and any other agreements that you may find.

KFC contends this instruction badly misstates the applicable law because, absent a fiduciary relationship between the parties to a contract,[5] California imposes a duty of disclosure only if one party knows of facts materially affecting the transaction and also knows that those facts were unknown to and not reasonably accessible to the other party. KFC argues that the instruction, as given, erroneously imposes upon every party to a contract a duty to disclose all material facts even if known or reasonably accessible to the other party.

KFC's view of California law finds support in *Goodman v. Kennedy,* 18 Cal.3d 335, 347, 556 P.2d 737, 134 Cal.Rptr. 375 (1976), where the state Supreme Court said that, absent a fiduciary relationship, a party to a transaction does not have a duty to disclose facts unless he knows both "the materiality of the omitted matters" and "that they were inaccessible to plaintiffs." Thus, a duty of disclosure may exist "when one

---

**5.** The trial court ruled that no fiduciary duty existed between the parties and directed a verdict on plaintiffs' claim for a breach of fiduciary duty in favor of KFC. Walker and Z contend, however, that

> [i]n California, a fiduciary or confidential relationship exists whenever trust and confidence is reposed by one person in the integrity and fidelity of another, *Main v. Merrill Lynch, Pierce, Fenner & Smith,* 67 Cal. App.3d 19, 31, 136 Cal.Rptr. 378 (1977).

Appellants' Reply and Answering Brief at 31. They have apparently overlooked the fact that the court in *Main* prefaced the statement cited not by a reference to both confidential and fiduciary relationships, but only to the former. In the same paragraph, the *Main* court explicit-

ly notes that a fiduciary relationship arises only when the person in whom confidence is reposed acquires some control over the affairs of the other. *Id.*

Walker and Z contend further that a fiduciary relationship exists between the parties to this case as a result of California's Franchise Investment Law. Cal.Corp.Code §§ 31000 et seq. (West 1977). There is no indication in the Franchise Investment Law that the Legislature intended, however, to impose a fiduciary duty on franchisors. Given the detailed provisions of the Franchise Investment Law and the absence of any provision imposing a fiduciary duty, we will not read into that law such a duty based solely on the franchisor-franchisee relationship.

party to a transaction has sole knowledge or access to material facts and knows that such facts are not known to or reasonably discoverable by the other party." *Id.*

As authority for the jury instructions, Walker and Z cite only a footnote to *Stout v. Turney,* 22 Cal.3d 718, 723 n. 6, 586 P.2d 1228, 150 Cal.Rptr. 637 (1978). They contend that in this brief note the California Supreme Court drastically changed California law by holding that California Civil Code § 1572 (West 1982) imposes upon every party to a contract a legal duty to disclose even in the absence of knowledge of materiality and inaccessibility.

We cannot agree with plaintiffs' interpretation of *Stout v. Turney.* In that case, the "sole issue of consequence involved" was the accuracy of jury instructions regarding the assessment of damages for the fraudulent sale of real property. 22 Cal.3d at 723, 586 P.2d 1228, 150 Cal.Rptr. 637. In the footnote cited by plaintiffs, the California Supreme Court simply rejected a contention that nondisclosure or concealment could never sustain a cause of action for fraud in the absence of a fiduciary relationship. *Id.* at 723 n. 6, 586 P.2d 1228, 150 Cal.Rptr. 637. The court stated that, "Civil Code section 1572 ... indicates that actual fraud by a party to a contract includes '... 3. The suppression of that which is true, by one having knowledge or belief of the fact; ....'" *Id.* Even had this remark been the holding of the case, the context makes clear that the court did not intend to overrule *Goodman v. Kennedy* sub silentio by eliminating the requirement of a finding of knowledge of materiality and inaccessibility. We therefore agree with KFC that *Stout v. Turney* has not changed the law of California on a party to a transaction's duty of disclosure.

Walker and Z argue further, however, that even if the fraudulent concealment instruction was defective in not requiring the jury to find that the defendant knew

that the omitted facts were material and inaccessible to the plaintiff, the instructions as a whole fairly covered the applicable law and required the jury to make the findings required by *Goodman v. Kennedy.* Plaintiffs cite a specific instruction requiring the jury to find that KFC possessed an intent to defraud. This point is to no avail. A general instruction that KFC must possess an intent to defraud does not inform the jury that under the fraudulent concealment theory it must specifically find that the defendant knew that the omitted facts were material and inaccessible to the plaintiffs.[6]

Plaintiffs contend further that a general duty of disclosure exists where a partial disclosure is likely to mislead in the absence of full disclosure. The jury, however, was not so instructed as part of the specific fraudulent concealment instruction. Rather partial disclosure was mentioned in a single phrase in a definition of deceit under California law that preceded the instructions on discrete theories of fraudulent deceit based upon a promise made without intent to perform, intentional misrepresentation, negligent misrepresentation, and finally, concealment of a fact. The inclusion of a single phrase on partial disclosure in a general preliminary instruction does not, in our opinion, effectively cure the defect in the instruction setting forth the specific elements that must be established to prove fraudulent concealment.

Having looked "to the entire jury charge ... to determine whether the instructions fairly stated the legal principles to be applied by the jury," *Smiddy v. Varney,* 665 F.2d 261, 265 (9th Cir.1981), *cert. denied,* 459 U.S. 829, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982), we conclude that they did not. The instructions did not require the jury to find that the defendants knew the materiality and inaccessibility of the omitted facts. The instructions as a whole thus did not

---

**6.** Plaintiffs also argue that the defect in the jury instructions was cured by an instruction requiring the jury to find that the omitted facts were material. This argument is similarly unresponsive. An instruction requiring the jury

to find that omitted facts are material does not require the jury to determine that the defendant knew that those facts were material to the plaintiff.

accurately state the law on fraudulent concealment. We agree with KFC that the instructions on fraudulent concealment were prejudicially erroneous, entitling KFC to a new trial on that issue.

## B

### *Sufficiency of the Evidence*

We now turn to KFC's argument that the evidence was legally insufficient to support the jury verdict on fraudulent concealment and that the district court erred in denying KFC's motion for judgment n.o.v. The district court applied the correct legal standard for ruling on a motion for judgment n.o.v.

> Simply stated, it is whether the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached. *Simblest v. Maynard,* 427 F.2d 1 (2d Cir.1970). *See also Davison v. Pacific Inland Nav. Co.,* 569 F.2d 507 (9th Cir.1978).

*Walker v. KFC Corp.,* 515 F.Supp. at 615. We apply the same standard in reviewing the district court's denial of the motion. *Maheu v. Hughes Tool Co.,* 569 F.2d 459, 464 (9th Cir.1977); 9 C. Wright & A. Miller, *Federal Practice and Procedure,* § 2524 (1971).

Giving plaintiffs the benefit of all reasonable inferences, we cannot say as a matter of law that there was insufficient evidence to support a jury verdict that reductions in KFC's national expansion plans, including reductions in national television advertising, were material facts to a prospective franchisee and that KFC knew such information was material and inaccessible to plaintiffs. KFC contends that plaintiffs learned of changes in KFC's plans for national expansion soon after they were made. The evidence on that issue is in conflict, however, and it is the function of the jury, not this court, to resolve the conflict.

KFC further argues that a jury finding of any material omission from its representations about its national expansion or equipment financing plans would have been irreconcilable with the jury verdict that KFC had made no intentional misrepresentations. Plaintiffs' fraudulent concealment claims, KFC contends, are simply the mirror images of the misrepresentation claims disallowed by the jury and thus cannot support the verdict. As authority for its argument that we may overturn a jury verdict for insufficiency of the evidence because of the jury's arguably inconsistent responses to special interrogatories, KFC cites only *Outboard Marine Corp. v. Superior Court,* 52 Cal.App.3d 30, 36–37, 124 Cal.Rptr. 852 (1975). *Outboard Marine,* however, did not involve setting aside a jury verdict. The issue there was rather the interpretation of a statute providing an exclusive remedy for fraudulent misrepresentation. The plaintiffs' complaint attempted to circumvent this exclusivity provision by pleading both fraudulent misrepresentation and fraudulent concealment causes of action based on the same facts. The court held only that where the two causes of action alleged the same conduct, the same causal relation, and the same damage, the exclusivity provisions of the act controlled. *Outboard Marine* is thus inapposite to the question of the legal sufficiency of the evidence.[7]

The judgment to the extent it awards damages to KFC on its counterclaim is AFFIRMED.

The judgment to the extent it awards damages to plaintiffs on their promissory estoppel claim is REVERSED.

The judgment to the extent it awards damages to plaintiffs on their fraudulent concealment claim is REVERSED and REMANDED for a new trial on that issue.

---

**7.** Having reversed the judgment of the district court on the promissory estoppel claim and having reversed and remanded on the fraudu-

lent concealment claim, we need not reach the issue of damages.