Filed 1/4/23  San Jose Nihonmachi v. Miraido Corp. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SAN JOSE NIHONMACHI, LLC, | B323093 |
| Plaintiff and Appellant, | (Santa Clara County Super. Ct. No. 17CV316504) |
| v. | |
| MIRAIDO CORPORATION, et al., | |
| Defendants and Respondents. | |

Appeal from an order of the Superior Court of Santa Clara County, Sunil R. Kulkarni, Judge.  Reversed.

Gates Eisenhart Dawson, Marc A. Eisenhart, James L. Dawson and Steven D. McLellan for Plaintiff and Appellant San Jose Nihonmachi, LLC.

The Keegan Law Firm, William J. Keegan; Law Office of Gerald Clausen and Gerald Clausen for Defendants and Respondents Japantown Development, L.P., A.F. Evans Co., Inc., and AFE Urban, Inc.

Brothers Smith and Mark V. Isola for Defendants and Respondents Miraido Corporation and Yoshihiro Uchida.

_____

Plaintiff and appellant San Jose Nihonmachi, LLC (SJN) seeks reversal of the trial court's October 25, 2019 order awarding $287,380.75 in attorney fees to defendant and respondent Miraido Corporation (Miraido) (collectively with defendant and respondent Yoshihiro Uchida (Uchida), Miraido respondents) and $392,723.37 in attorney fees to A.F. Evans Co., Inc. (A.F. Evans), AFE Urban, Inc. (AFE Urban), and Japantown Development, L.P. (Japantown Development) (collectively, Japantown respondents).  We reverse the award as to Miraido because the contractual fee provision on which the award is based permits the recovery of only those fees incurred in arbitration or litigation following arbitration, and the parties agree that the underlying claims here never were arbitrated. We also reverse the fee award as to Japantown respondents because we conclude that SJN's voluntarily dismissed breach of fiduciary duty claim was "on a contract," and Civil Code section 1717, subdivision (b)(2)[1] thus bars any fee award.

_____

[1] All unspecified statutory references are to the Civil Code.

## FACTUAL SUMMARY AND PROCEDURAL HISTORY[2]

### A.    *Overview of Parties' Historical Relationship*

The parties to this appeal have been working with each other for more than 30 years—and litigating against each other for nearly as long.  The chronicle giving rise to the 2017 lawsuit by SJN (the 2017 action) that forms the basis for this appeal begins in 1987, when a group of businesspeople, including Uchida, decided to pursue development of a Japanese cultural center and low-income housing project in the "Japantown" area of San Jose, California (the project).  They formed an entity for this purpose, and individual investors provided capital to the entity to enable it to purchase land.

In January 1992, the entity acquired title to real property located at the corner of 6th Street and Jackson Street in San Jose, California (the property).  Because the investors' funds were insufficient to pay the purchase price for the property, Uchida provided a $4.2 million loan to the entity.  The entity was unable to stay current on the loan payments to Uchida, however, and in October 1992, the entity agreed to convey the property to Miraido, Uchida's wholly owned corporation, in exchange for Uchida's forgiveness of the loan.

In June 1993, Uchida and a few other individuals agreed to create a new entity, Nihonmachi-Miraido Partners, L.P. (NMP), to make a renewed effort at development of the property.  Pursuant to the June 7, 1993 limited partnership agreement governing NMP (the NMP agreement), Miraido served as NMP's general partner, and SJN's predecessor-in-interest, San Jose

---

[2] We summarize here only the facts and procedural history relevant to our resolution of this appeal.

3

Nihonmachi Corporation, served as its limited partner.[3]  The 42-page agreement sets forth the terms of the partnership and, as discussed, *post*, contains a provision authorizing the recovery of attorney fees under certain circumstances.

In connection with forming the partnership, Miraido transferred the beneficial interest in the property to NMP.  SJN did not transfer any assets to NMP, but received credit for its historical cash contribution in the original (now-defunct) entity established to purchase and develop the property.  Miraido respondents contend that the purpose of recognizing SJN's historical contribution was to allow all the original investors to maintain an interest in the project without investing any new funds.

In June 1995, development of the project again stalled, and NMP therefore sold the property to the San Jose Redevelopment Agency (RDA).  Then, on May 1, 1997, NMP entered into a limited partnership agreement with A.F. Evans, forming a new entity—Japantown Development—to take over development of the property (the Japantown agreement).  Respondents contend that NMP formed Japantown Development for the purpose of entering into a "ground lease" with the RDA, and "to tap into the talent and experience of Art Evans [(Evans)]," the chief executive officer (CEO) of A.F. Evans, "for management of the construction of the project, as well as its operations once it was completed." SJN contends, in contrast, that NMP entered into the Japantown

---

[3] The parties agree that SJN acquired all the rights of San Jose Nihonmachi Corporation in 2003, and the distinction between the two entities is not pertinent to the issues on appeal. In the interest of simplicity, we therefore refer only to SJN in the remainder of the opinion.

Development partnership because, without A.F. Evans, Miraido could not qualify for the loans necessary to develop the property.

The Japantown agreement designated A.F. Evans as Japantown Development's general partner and NMP as its sole limited partner. Like the NMP agreement, the Japantown agreement contains a provision (set forth in full, *post*) permitting the recovery of certain attorney fees. Soon after Japantown Development's formation, in 1997, construction began at the property on the development of what would become a 109-unit multifamily residential rental facility known as Miraido Village.

In the midst of construction, in August 1998, SJN filed a lawsuit against Miraido, Uchida, A.F. Evans, and Japantown Development (the 1998 action) seeking, inter alia, invalidation of the June 1995 sale of the property to the RDA and recalculation of the NMP capital accounts for Miraido and SJN. After nearly five years of litigation, the parties entered into a settlement agreement in February 2003 (the 2003 settlement). The 2003 settlement does not contain a provision permitting the recovery of attorney fees; instead, paragraph 13 of the settlement provides that "[t]he lawsuit [i.e., the 1998 action] will be dismissed with prejudice upon signing of the releases and all parties will bear their own costs and attorney[ ] fees."

Construction had continued during the 1998 action and the project was completed by the end of 1999. The property, however, had significant, on-going environmental clean-up issues stemming from a prior owner's industrial use of the land. Although the issue did not prevent leasing the units at Miraido Village, respondents contend that the problem consumed funds generated from the lease payments.

SJN contends that A.F. Evans filed for bankruptcy in 2009, and, on January 1, 2014, Evans and Uchida therefore executed an amendment to the Japantown agreement pursuant to which AFE Urban—another entity for which Evans served as CEO—replaced A.F. Evans as Japantown Development's general partner.

In December 2016, AFE Urban negotiated the sale of the project from Japantown Development to a third-party buyer for a purchase price of $37 million.  Thereafter, AFE Urban, with Miraido's consent, agreed to several amendments to the initial sales agreement, including a reduction in the purchase price and the payment by Japantown Development of certain expenses. The sale of the property closed escrow on September 29, 2017, with a final sales price of approximately $34.5 million.  SJN contends that AFE Urban and Miraido agreed to the sale and reduction in purchase price without its consent, despite their alleged knowledge that the partnership agreements required SJN's consent for such transactions.  SJN contends further that, although AFE Urban "justified the reduction in sales price based upon remedial work relating to window and water pipes," Evans "knew about these repair issues long before the sale . . . [y]et A.F. Evans . . . and AFE Urban . . . delayed making any timely repairs," and failed to seek reimbursement from the company that improperly installed the windows.

### B.  *SJN's 2017 Action Against Respondents*

On September 29, 2017, the day the sale closed, SJN filed the 2017 action against respondents in connection with the project.  In tandem with its complaint, SJN filed an application for a temporary restraining order (TRO) requiring that all the proceeds from the property's sale be held in escrow.

6

Miraido respondents argued in opposition to the TRO that, by "bringing th[e] action in [the superior c]ourt, SJN [was] violating the binding arbitration provision." They concede, however, that they "then allowed [the arbitration requirement] to be waived," and proceeded to litigate against SJN in the superior court. The trial court issued the TRO, but on November 7, 2017, it denied SJN's application for a preliminary injunction.

The parties' subsequent litigation over the sufficiency of the pleadings culminated in SJN's filing of its third amended complaint (TAC)—the operative complaint for purposes of this appeal—on June 14, 2018.[4]

---

[4] On April 9, 2018, approximately two months before SJN filed the TAC, Miraido respondents filed a cross-complaint asserting claims for breach of contract, breach of fiduciary duty, defamation, and two causes of action for declaratory relief against SJN and two of SJN's members, Larry Yamaoka and Albert Kogura. On October 17, 2018, the court dismissed the claims for breach of contract and defamation, and struck one paragraph of the breach of fiduciary duty claim, in response to "anti-SLAPP" special motions to strike filed by SJN, Yamaoka, and Kogura. Then, on December 14, 2018, SJN filed a motion to compel and stay arbitration of the cross-complaint's fifth cause of action for declaratory relief. The trial court granted SJN's motion on January 22, 2019, ordering that the claim be arbitrated, but staying the arbitration pending resolution of the claims before the trial court. While respondents' fee motions (discussed, *post*) were pending, on September 30, 2019, Miraido respondents dismissed their fifth cause of action for declaratory relief against SJN, without prejudice. They subsequently dismissed, without prejudice, all remaining causes of action in their cross-complaint on December 4, 2019, a little over a month after the court ruled on respondents' fee motions.

7

The TAC asserts four claims: (1) accounting, (2) breach of fiduciary duty, (3) declaratory relief, and (4) conversion. The parties' dispute here hinges on SJN's breach of fiduciary duty claim against Miraido, Japantown Development, and AFE Urban—specifically, the portion of that claim premised on the alleged negligent repair of windows, alleged concealment of certain facts in connection with those repairs, and alleged negligence in negotiating the sale of the project.

SJN's allegations concerning the negligent repair of windows and related misrepresentations appear primarily in paragraph 81 of the TAC, which provides:

"81. As a general partner of Japantown Development . . . , defendant AFE Urban . . . owed the highest duties of loyalty, honesty and care to its limited partner, NMP . . . . By engaging in the wrongful conduct described herein, AFE Urban . . ., by and through its President/CEO . . . Art Evans, and through the actions of its limited partner Miraido, by and through its President/CEO, defendant . . . Uchida, breached these duties by failing to timely disclose and remedy window repairs, by concealing the failed actions of the general partners of Japantown Development . . . , AFE Urban . . . , and its predecessor[,] [A.F. Evans], and by improperly attempting to pass the cost of these defendants' failed actions [to the partnerships], currently estimated at $1,400,000.00 (comprised of the $400,000.00 earlier repair costs and the $1,000,000.00 price reduction)."

In addition, paragraph 75 of the TAC indicates that the breach of fiduciary claim "incorporates by reference the allegations of [p]aragraphs 1 through 74," and SJN contends

8

that additional allegations concerning the negligent repairs and related misrepresentations appear in paragraphs 17, 44, and 45.

Finally, the TAC goes on to allege that—despite these provisions in the Japantown agreement—"defendants A.F. Evans . . . and AFE Urban . . . failed to timely seek reimbursement" from Devcon Construction Inc. (Devcon) for repair of the leaking windows and related water damage at Miraido Village, even after allegedly discovering that Devcon had improperly installed the windows.

With respect to alleged negligence in the sale of the project, SJN contends that the relevant allegations appear primarily in paragraphs 34 through 37, 40, and 77 of the TAC.

Although the parties litigated the 2017 action for nearly two years, both sets of respondents contend that SJN's claims were meritless, and that SJN never intended to pursue the action through trial. The respondents maintain, for example, that the releases in the 2003 settlement barred many of SJN's claims. And they assert that SJN failed meaningfully to pursue its claims, including by failing to depose key witnesses.

## C. *SJN's Voluntary Dismissal of Its Claims*

On December 21, 2018, the court set trial for May 20, 2019. The parties did not reach a resolution of their claims at the May 15, 2019 mandatory settlement conference. On May 16, 2019, SJN voluntarily dismissed, without prejudice, all but its first claim for an accounting. Less than a week later, on May 21,

9

2019, SJN dismissed, without prejudice, its remaining accounting claim.[5]

### D. *Respondents' Motions for Attorney Fees and Relevant Fee Provisions*

Following SJN's voluntary dismissal of its claims, on July 22, 2019, both sets of respondents filed motions for prevailing party attorney fees. Japantown respondents' motion relied upon the fee provision in section 13.2 of the Japantown agreement, which provides:

"Attorneys' Fees. In any legal action between or among the partners to enforce or interpret any of the terms of this agreement, or in any action in any way pertaining to the partnership affairs or to this agreement, the prevailing party in such action shall be entitled to recover expenses incurred by it in such proceeding, including reasonable attorneys' fees." (Capitalization & underscoring omitted.)

In their separate motion, Miraido respondents relied upon the following provision in section 8.9 of the NMP agreement to support their fee request:

"Arbitration and attorneys' fees. Any controversy or claim arising out of or relating to this agreement, the partnership or the partners' rights or duties shall be in accordance with the commercial rules of the American Arbitration Association, and judgment upon the award may be entered in any court of

---

[5] In August 2019, SJN filed a new action against Japantown Development, NMP, AFE Urban, and Uchida (the 2019 action), which is the subject of a related appeal. (*San Jose Nihonmachi, LLC v. Japantown Development, L.P. et al.* (Jan. 4, 2023, B323095) [nonpub. opn.].)

competent jurisdiction. The arbitrators shall apply California substantive law to the proceeding. The arbitrators shall have the power to grant all legal and equitable remedies and award compensatory damages provided by California law, but shall not have the power to award punitive damages. The arbitrators shall prepare in writing and provide to the parties an award including factual findings and the reasons on which the decision is based. The arbitrators shall not have the power to commit errors of law or legal reasoning, and the award may be vacated or correction [*sic*] pursuant to . . . Code of Civil Procedure sections 1286.2 or 1286.6 for any such error. The prevailing partner or partners in such arbitration and any ensuing legal action shall be reimbursed by the partner or partners who do not prevail for their reasonable attorney's, accountants', and experts' fees and the costs of such arbitration and action." (Capitalization & underscoring omitted.) SJN opposed both motions.

### E. *Trial Court's Order Awarding Fees*

The trial court heard respondents' fee motions on September 5, 2019. On October 25, 2019, the court issued its order on the motions. The court declined to award any fees in connection with SJN's claims for conversion, accounting, and declaratory relief. It concluded that Miraido respondents could not recover fees on the conversion claim because (1) SJN asserted that cause of action only against Uchida, and (2) Uchida was not a signatory to the NMP agreement containing the relevant fee provision. The court also declined to award fees in connection with SJN's accounting and declaratory relief claims. It reasoned that because those claims were "on a contract" and had been voluntarily dismissed, section 1717, subdivision (b)(2) barred any fee award on those causes of action.

11

The court applied similar reasoning in concluding that respondents could not recover fees in connection with the portion of SJN's breach of fiduciary duty claim "based on alleged accounting deficiencies"; however, the court found that Miraido and Japantown respondents could recover fees on the portion of that claim arising out of SJN's allegations that certain respondents "breached their fiduciary duties by 'failing to timely disclose and remedy window repairs, by concealing the failed actions of the general partners of [Japantown Development,] . . .' [and by] . . . negligently negotiat[ing] the sale of the [p]roject." The court concluded that these allegations were not "on a contract"—and thus not subject to the prohibition in section 1717, subdivision (b)(2)—and that the partnership agreements' respective attorney fee provisions were "broad[ ] enough to cover this tort claim."

Finally, although the court noted that the fee provision in the NMP agreement "envisions arbitration, not standalone litigation," it nonetheless proceeded to award $287,380.75 in fees to Miraido[6] in connection with the 2017 action because "SJN never raise[d] this 'fees only for arbitration' issue in its attorney fees opposition to the Miraido [respondents'] . . . brief" and thus "ha[d] forfeited this argument." The court also awarded

---

**6** The trial court's order states expressly that "Uchida . . . cannot obtain attorney fees because he is not a signatory to a contract with an attorney fees provision." The conclusion of the order, however, awards $287,380.75 in fees to the "Miraido [d]efendants"—a group the order defines as consisting of Miraido and Uchida. This appears to be a clerical error, and the parties agreed at oral argument that the trial court did not award any fees to Uchida in his individual capacity.

12

Japantown respondents $392,723.37 in fees.  SJN timely appealed the fee awards.

## DISCUSSION

### A.    *Standard of Review*

We review the asserted legal basis for contractual attorney fees de novo.  (*Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.* (2012) 211 Cal.App.4th 230, 237 (*Barnhart*).)

### B.    *The Plain Language of the NMP Partnership Agreement Precludes the Fee Award to Miraido*

#### 1.    *Law Governing Interpretation of Attorney Fee Provisions*

"Unless a contract or statute provides otherwise, each party to a lawsuit must pay its own attorney fees."  (*Kangarlou v. Progressive Title Co., Inc.* (2005) 128 Cal.App.4th 1174, 1178 (*Kangarlou*), citing Code Civ. Proc., § 1021.)  Where, as here, a contract provides the basis for a party's entitlement to fees, that contract " 'must be analyzed on its own terms, and in context, pursuant to the usual rules of contract interpretation for determining the actual intent of the parties.  [Citations.]' " (*GoTek Energy, Inc. v. SoCal IP Law Group, LLC* (2016) 3 Cal.App.5th 1240, 1249, quoting *Rideau v. Stewart Title of California, Inc.* (2015) 235 Cal.App.4th 1286, 1297.)

#### 2.    *Application*

SJN argues that the trial court erred in awarding fees to Miraido because the NMP partnership agreement's attorney fee provision applies only to arbitrated disputes, and the parties here never participated in arbitration.  We agree.

13

The fee provision in the NMP partnership agreement provides, in relevant part:

"Arbitration and attorneys' fees.  Any controversy or claim arising out of or relating to this agreement, the partnership or the partners' rights or duties shall be in accordance with the commercial rules of the American Arbitration Association, and judgment upon the award may be entered in any court of competent jurisdiction. . . . The prevailing partner or partners in *such arbitration and any ensuing legal action* shall be reimbursed by the partner or partners who do not prevail for their reasonable attorney's, accountants', and experts' fees and the costs of *such arbitration and action*."  (Capitalization and underscoring omitted and italics added.)

The provision is unambiguous in permitting the recovery of only those attorney fees incurred as the result of an "arbitration and any ensuing legal action."  The word "ensuing" means "to take place afterward or as a result." (See Merriam-Webster.com Dict., Merriam-Webster, <https://www.merriam-webster.com/dictionary/ensue> ["ensue" (as of Jan. 3, 2023)]; accord, Collins English Dict. <https://www.collinsdictionary.com/dictionary/english/ensuing> ["ensuing  . . . 1. following subsequently or in order[;] [¶] 2. following or occurring as a consequence; resulting" (as of Jan. 3, 2023)]; *see also Scott v. Continental Ins. Co.* (1996) 44 Cal.App.4th 24, 30 [courts may discern ordinary meaning of words from dictionary definitions].)  By its plain language, the NMP agreement's fee provision thus applies only to fees incurred in (1) an arbitration and (2) legal actions that follow an arbitration.  Because the parties here agree that no arbitration ever occurred, the provision does not authorize a fee award.

14

(*Accord, Kalai v. Gray* (2003) 109 Cal.App.4th 768, 777 (*Kalai*) ["The parties' agreement allows for an award of fees only in favor of the 'prevailing party to [the a]rbitration.' Simply put, there has not yet been a prevailing party to the arbitration, because there has not been an arbitration."].)

Miraido's various arguments in opposition do not convince us otherwise. First, we are unpersuaded that, by failing to raise the issue below, SJN waived the argument that the fee provision applies only to arbitrated disputes. Miraido does not dispute that it bore the burden of establishing its entitlement to fees before the trial court. (*See, e.g., ComputerXpress, Inc v. Jackson* (2001) 93 Cal.App.4th 993, 1020−1021.) Moreover, Miraido concedes that where—as here—the facts are undisputed, the interpretation of a contract is a pure question of law that we may consider even if raised for the first time on appeal. (*See, e.g., Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 24 ["[u]nder settled law, the Court of Appeal ha[s] discretion to address the issue even though it ha[s] not been raised in the trial court"].) Finally, the principle animating the forfeiture rule—" 'to encourage parties to bring errors to the attention of the trial court, so that they may be corrected' " (*In re Sheena K.* (2007) 40 Cal.4th 875, 881)—simply is not at play here, where the court expressly noted that the NMP agreement's fee provision "envisions arbitration, not standalone litigation."

Second, we find unconvincing Miraido's contention that the fee provision is ambiguous and can be read as permitting the recovery of fees in any "action" involving a breach of the NMP agreement. Miraido's insistence that the contract does not state "express[ly]" that arbitration is a condition precedent to a fee award is belied by the plain language of the fee provision. And as

15

set forth, *ante*, we disagree that the phrase "any ensuing legal action" is ambiguous.  Nor are we persuaded by the argument that the 2003 settlement reveals a latent ambiguity in the fee provision.  Miraido urges that the language in paragraph 13 of the settlement—that "[t]he lawsuit will be dismissed with prejudice upon signing of the releases and all parties will bear their own costs and attorney[ ] fees"— suggests that the parties "had a shared understanding" that the NMP agreement permits the recovery of fees even in the absence of an arbitration.  Miraido argues that "[o]ne can infer from that language that the parties believed in 2003 that[,] without that provision, the prevailing party could have sought to recover its attorneys' fees incurred in the 1998 [a]ction, and the parties (i.e., [a]ppellant and [r]espondents) wanted to be certain that this was not allowed."

A court "provisionally receives any proffered extrinsic evidence that is relevant to prove a meaning to which the language of the instrument is reasonably susceptible.  [Citations.]  If, in light of the extrinsic evidence, the language is reasonably susceptible to the interpretation urged, the extrinsic evidence is then admitted to aid the court in its role in interpreting the contract." (*Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1126.)  Paragraph 13 of the 2003 settlement, however, does not demonstrate that the NMP agreement's fee provision is reasonably susceptible to Miraido's construction.  As an initial matter, the language in paragraph 13 is keyed expressly to settling only "the lawsuit," namely, the 1998 action.  Moreover, the parties to the 2003 settlement included Japantown Development, A.F. Evans, and Miraido.  As SJN points out, the settlement contemplated that Miraido and SJN would become limited partners in Japantown Development, and the Japantown

16

agreement's fee provision does not limit the recovery of fees to those in arbitration or ensuing actions.  And we agree with SJN that "a waiver of fees as between Japantown, its general partner, and [its] potential limited partners is entirely consistent with waiving the broad attorney's fees clause in the Japantown agreement."  (Italics omitted.)  We therefore fail to see how the 2003 settlement creates any inference as to what the parties intended with respect to the NMP agreement's fee provision, and the settlement thus does not establish a latent ambiguity as to what "ensuing action" means.  Finally, we note that Miraido's request that we consider the 2003 settlement does not affect our conclusion, *ante*, that interpretation of the NMP agreement's fee provision is a legal question.  "When there is no material conflict in the extrinsic evidence, the . . . court interprets the contract as a matter of law" (*Wolf*, *supra*, 162 Cal.App.4th at p. 1126), and here, there is no dispute that the 2003 settlement contains the language quoted by Miraido.

Third, Miraido's attempt to distinguish *Kalai* fails.  In *Kalai*, *supra*, 109 Cal.App.4th 768, the Court of Appeal reversed an attorney fee award in a dispute between a homeowner and a contractor.  (*Id.* at p. 771.)  Notwithstanding the homeowner's consent to a mandatory arbitration clause in his agreement with the contractor, the homeowner filed suit against the contractor in superior court.  (*Id.* at p. 772.)  Rather than move to compel arbitration, however, the contractor moved for summary judgment based on the arbitration clause.  (*Ibid.*)  The court granted summary judgment for the contractor, as well as the contractor's subsequent request for attorney fees.  (*Id.* at pp. 773–774.)  The Court of Appeal reversed the fee award, explaining that "there has not yet been a prevailing party to the

17

arbitration, because there has not been an arbitration." (*Id.* at p. 777.)

Miraido insists that the case is distinguishable because, unlike SJN, "the appellant in *Kalai* had presented his argument to the trial court." But the reasoning in *Kalai* did not hinge on that fact, and as set forth, *ante*, we are unpersuaded by Miraido's arguments concerning forfeiture. Also unpersuasive is Miraido's assertion that "the fees provision in the NMP [agreement] is much broader" than the fee provision in *Kalai* because "[t]he provision in [the *Kalai*] contract expressly limited attorneys' fees only to the prevailing party to the arbitration." (Capitalization omitted.) Miraido fails to explain how the additional language in the NMP agreement—permitting the recovery of fees incurred in "arbitration *and any ensuing legal action*"—distinguishes this case from *Kalai*. (Italics added.) Here, as in *Kalai*, the parties can recover fees only once their dispute has been arbitrated. And here, as in *Kalai*, no such arbitration took place.

Accordingly, we conclude that the plain language of the fee provision in the NMP partnership agreement precludes an award of attorney fees to Miraido in this case.[7]

---

[7] In light of this conclusion, we need not address SJN's arguments concerning (1) Miraido's voluntary dismissal of the fifth cause of action in the cross-complaint, and (2) whether the trial court abused its discretion in awarding all but 15 percent of Miraido's requested fees. We also need not address Miriado respondents' arguments that SJN's claims are not "on a contract," including its contention that SJN effectively conceded before the trial court that its claims were not subject to the NMP agreement's arbitration provision—and thus not "on a contract"—by pursuing its own claims in superior court, while

18

### C. *Section 1717, Subdivision (b)(2) Bars the Fee Award to Japantown Respondents*

Unlike the NMP agreement, the Japantown agreement does not limit the recovery of attorney fees to those incurred in or following arbitration. And SJN does not dispute that the Japantown agreement's fee provision is broad enough to encompass the litigation underlying this appeal. Instead, SJN contends that (1) the TAC alleges that its breach of fiduciary duty claim against Japantown respondents is "on a contract," and (2) because SJN voluntarily dismissed the claim, section 1717, subdivision (b)(2) mandates that there was no "prevailing party" in the underlying litigation, thereby precluding any attorney fee award. We agree because we conclude that it is "unclear" whether SJN's breach of fiduciary duty claim is "on a contract." (*Kangarlou, supra,* 128 Cal.App.4th at p. 1178 [" '[i]f unclear[,] the action will be considered based on contract rather than tort' "].)

#### 1. *Section 1717*

"[C]ontractual attorney fee provisions are generally enforceable in voluntary pretrial dismissal cases except as barred by section 1717." (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 622.) An action involving contract claims is an action "on a contract," and section 1717 governs entitlement to contractual attorney fees. When an action "on a contract" is voluntarily dismissed, section 1717, subdivision (b)(2) directs that "there

---

simultaneously seeking to compel arbitration of one of Miraido respondents' cross-claims for declaratory relief. Finally, our conclusion compels denial of Miraido respondents' request for attorney fees on appeal.

19

shall be no prevailing party for purposes of this section." (§ 1717, subd. (b)(2).) Section 1717, subdivision (b)(2) operates to bar recovery of fees in this circumstance "*even though the contract on its own terms authorizes recovery of those fees.*" (*Santisas, supra,* 17 Cal.4th at p. 617.)

"This bar, however, applies *only* to causes of action that are based on the contract and are therefore within the scope of section 1717. If the voluntarily dismissed action also asserts causes of action that do not sound in contract, those causes of action are not covered by section 1717, and the [contract's] attorney fee provision, depending upon its wording, may afford the defendant a contractual right, not affected by section 1717, to recover attorney fees incurred in litigating those causes of action." (*Santisas*, *supra*, 17 Cal.4th at p. 617.)

" 'California courts construe the term "on a contract" liberally.' [Citation.]" (*Barnhart, supra,* 211 Cal.App.4th at p. 240.) The phrase "includes not only a traditional action for damages for breach of a contract containing an attorney fees clause [citation], but also any other action that 'involves' a contract under which one of the parties would be entitled to recover attorney fees if it prevails in the action [citation]." (*Ibid.*) A cause of action "involves" a contract where it "arises out of, is based upon, or relates to an agreement by seeking to define or interpret its terms or to determine or enforce a party's rights or duties under the agreement." (*Id.* at p. 242.) "[T]he dispositive question is whether [the] pleading served to put the contract theory in issue." (*Perry v. Robertson* (1988) 201 Cal.App.3d 333, 338 (*Perry*).)

"An act such as breach of fiduciary duty may be both a breach of contract and a tort." (*Kangarlou, supra,* 128

20

Cal.App.4th at p. 1178.) " 'Whether an action is based on contract or tort depends upon the nature of the right sued upon, not the form of the pleading or relief demanded. If based on breach of promise, it is contractual; if based on breach of a noncontractual duty it is tortious. [Citation.] If unclear[,] the action will be considered based on contract rather than tort. [Citation.]' " (*Id.* at pp. 1178–1179, quoting *Arthur L. Sachs, Inc. v. City of Oceanside* (1984) 151 Cal.App.3d 315, 322.)

### 2.   *Application*

The trial court awarded Japantown respondents attorney fees based solely on its conclusion that a portion of SJN's breach of fiduciary claim—namely, SJN's allegations concerning the "negligent repair of windows, misrepresentations about the repairs, and . . . negligence in negotiating the sale of the [p]roject"—sound in tort. We agree with SJN, however, that it is at least "unclear" whether these allegations invoke a contractual duty, and we therefore conclude that this portion of the breach of fiduciary duty claim is "on a contract." (*See Kangarlou*, *supra*, 128 Cal.App.4th at pp. 1178–1179; *Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1602 (*Amtower*).)

Turning first to SJN's allegations concerning negligent window repairs and related misrepresentations, paragraph 45 of the TAC—incorporated by reference into the breach of fiduciary duty claim by paragraph 75—refers expressly to duties imposed by the Japantown agreement: *"The duty owed by A.F. Evans . . . , and now its predecessor AFE Urban . . . , is unavoidable under the terms of the Japantown . . . agreement.* The controlling provisions are: [Paragraph] 5.1 which mandates that the day-to-day business affairs 'shall be managed by the [g]eneral [p]artner, [A.F. Evans].' This provision also states that the day-to-day

21

business affairs expressly included 'to cause the construction of the [p]roject . . . .' It continues: 'During construction of the [p]roject, [A.F. Evans] shall . . . oversee construction and approve change orders . . . .' And, finally, paragraphs 5.5 and 3.1(b) confirm [A.F. Evan's] duty as the Japantown [Development] general partner related directly to the construction services provided by Devcon." (Italics added.)

SJN's allegations concerning the negligent sale of the project similarly make express reference to the Japantown agreement and the duty it allegedly imposed on AFE Urban to obtain SJN's consent prior to selling the property. Paragraphs 34 and 35 of the TAC provide in relevant part, for example: " . . . The Japantown . . . agreement, as amended, indicates that there should be documentation from or by the partners consenting to a sale of the partnership's primary asset . . . . [¶] . . . The [Japantown agreement] further states in the relevant portion of paragraph 5.1(b) requiring the consent of the limited partner to [*sic*]: '(i) make any change in the scope of the project; . . . (ix) admit additional partners including, without limitation, the tax credit investor(s) . . . ; (xiv) do any act in contravention of this agreement.' " (Capitalization omitted.) Moreover, paragraph 37 alleges that "AFE Urban . . . [is] fully aware that the controlling partnership agreement[ ] (for Japantown Development . . . ) . . . required disclosure and consent from SJN . . . , the limited partner of NMP . . . ," and that AFE Urban engaged in a "pattern of ignoring and failing to comply with the requirements of the controlling partnership agreement[ ]."

Thus, at a minimum, the TAC's allegations render it "unclear" whether SJN's breach of fiduciary duty claim sounds

22

in contract or tort—a conclusion that compels us to treat the claim as "on a contract." (*See Amtower, supra,* 158 Cal.App.4th at p. 1602; *Kangarlou, supra,* 128 Cal.App.4th at pp. 1178−1179.)

Japantown respondents advance four arguments in opposition to SJN's contention that its breach of fiduciary duty claim is contractual. None is persuasive. First, Japantown respondents argue that SJN ignores the first sentence of paragraph 81 in the TAC. "Context is important," Japantown respondents urge, and a close reading of "the complete paragraph 81" should convince us that SJN "was intending to invoke statutory duties as opposed to contractual duties." (Underscoring omitted.) As set forth, *ante,* the first sentence of paragraph 81 provides: "As general partner of Japantown Development . . . , defendant AFE Urban . . . owed the highest duties of loyalty, honesty and care to its limited partner." (Capitalization and italics omitted.) Japantown respondents argue that this sentence demonstrates that "SJN alleges not that these duties arise from the Japantown agreement, but rather that they are imposed by AFE Urban's status '[a]s a general partner,' " pursuant to Corporations Code section 15904.08. (Capitalization and underscoring omitted.)

In further support of this argument, Japantown respondents contend that (1) the language in paragraph 81 "paraphrases [Corporations Code] section 15904.08"; and (2) "in an early pleading[,] SJN cited section 15904.08 as the basis of its negligence claim." They also point to the absence of the phrase " 'as required under the limited partnership agreement' " in paragraph 81 (a phrase that does appear in paragraph 82 of the TAC, in connection with accounting-related

23

allegations), urging that this confirms that SJN intended its claim to sound in tort.

Notwithstanding their assertion that "[c]ontext is important," Japantown respondents fail to explain how we can reconcile their arguments with the TAC's other allegations, including those in paragraph 45, suggesting that SJN intended to invoke a contractual duty in its breach of fiduciary duty claim. They do not dispute that paragraph 75 of the TAC incorporates these allegations by reference into the breach of fiduciary duty cause of action; instead, Japantown respondents offer only the conclusory assertion that we should ignore these allegations because they appear "up to 19 pages before[ ]" paragraph 81. Moreover, even assuming that paragraph 81 "paraphrases" Corporations Code section 15904.08, Japantown respondents offer no authority for the proposition that this is sufficient to demonstrate that SJN intended to invoke statutory, rather than contractual, duties. And as SJN notes, the "early pleading" in which it allegedly "cited [Corporations Code] section 15904.08 as the basis of its negligence claim"—SJN's reply brief in support of its request for a preliminary injunction—"makes plain that the [reference] to [Corporations Code] section 15908.07 support[ed] SJN's accounting claim." Finally, while we agree that SJN could have made its intention to invoke a contractual duty clearer by including in paragraph 81 the phrase "as required under the limited partnership agreement," the absence of that language does not demonstrate that SJN intended its claim to sound in tort.

Second, Japantown respondents contend that SJN mischaracterizes the "on a contract" inquiry set forth in *Barnhart*. SJN, however, expressly agrees with Japantown

24

respondents' formulation of the *Barnhart* standard, and argues persuasively that the standard is met here because the paragraphs of the TAC, set forth, *ante*, "identify[ ] various contractual provisions that were put at issue and would necessarily be analyzed, defined, and interpreted to determine whether a breach of fiduciary duty occurred."

Also unavailing is Japantown respondents' related argument that the *Kangarlou* and *Perry* cases on which SJN relies are distinguishable. In *Kangarlou*, the court held that each of several fiduciary duties breached by an escrow agent was "on a contract." (*See Kangarlou, supra,* 128 Cal.App.4th at p. 1179.) Similarly, in *Perry*, the court held that a homeowner's claims against real estate brokers and salespersons for negligence in drafting the sales agreement for her home were "on a contract." (*See Perry, supra,* 201 Cal.App.3d at p. 344.) In reaching its conclusion, the *Perry* court explained: "Defendants' central argument concerning the pleading is that, because it alleges that they were negligent, it must present only a legal theory in tort. This argument is fundamentally flawed. It selects the means of breach of contract as the determinant of its legal form. If the contract theory is negligence in the performance of contractual obligations, the allegation of negligence is integral to the statement of a cause of action for breach of contract." (*Id.* at p. 341.) Moreover, although Japantown respondents argue that the cases are distinguishable, they do not challenge the rule articulated in *Kangarlou*—which is dispositive here—that, where it is "unclear" whether an action is based in contract or tort, an action must be considered "on a contract."

Nor do the authorities to which Japantown respondents cite convince us that the breach of fiduciary duty claim alleged

25

in the TAC clearly sounds in tort.  (*See Stout v. Turney* (1978) 22 Cal.3d 718, 730 (*Stout*) [involving alleged fraud in the inducement of an agreement, rather than breach of a fiduciary duty arising from existing agreement]; *Eads v. Marks* (1952) 39 Cal.2d 807, 811−812 [not involving analysis of whether a claim was "on a contract" under section 1717]; *Loube v. Loube* (1998) 64 Cal.App.4th 421, 430 (*Loube*) [suggesting in dicta that a breach of fiduciary duty claim sounds in tort, but holding that legal malpractice claim, which did not depend on interpretation of retainer agreement to determine scope of relevant duties, arose in tort]; *Moallem v. Coldwell Banker Com. Group, Inc.* (1994) 25 Cal.App.4th 1827, 1830 [no analysis of whether breach of fiduciary duty claim was "on a contract"]; *DeMirjian v. Ideal Heating Corp.* (1949) 91 Cal.App.2d 905, 910 [no discussion of any breach of fiduciary duty cause of action and expressly distinguished by *Perry*].)

Third, Japantown respondents argue that the portion of SJN's breach of fiduciary duty claim alleging that AFE Urban " 'conceal[ed] the failed actions of the general partners' " in connection with the negligent window repairs constitutes a claim for fraud that can never be considered "on a contract."  But none of the four cases on which Japantown respondents rely compels the conclusion that the "concealment" allegation in SJN's breach of fiduciary duty claim necessarily sounds in tort.  Although *Loube* notes the general rule that fraud actions arise in tort, the claim underlying the fee request in that case was not fraud, but legal malpractice.  (*Loube, supra*, 64 Cal.App.4th at p. 430.) And *Stout, supra,* 22 Cal.3d at p. 730, *Orozco v. WPV San Jose, LLC* (2019) 36 Cal.App.5th 375, 409, and *Super 7 Motel Associates v. Wang* (1993) 16 Cal.App.4th 541, 544, all involved

alleged fraud in the inducement of a contract, rather than an allegation that a party breached a duty in an existing contract by concealing certain information.  (*See Stout*, *supra*, 22 Cal.3d at p. 730 [involving misrepresentations by defendant concerning sewage disposal system at a mobile home park to induce plaintiff to enter agreement to purchase park]; *Orozco*, *supra*, 36 Cal.App.5th at pp. 409−410 ["overall nature of . . . complaint sounded in tort and was not 'on a contract' " where "[t]he key question at trial was whether [one party] fraudulently induced [another] . . . to enter into [a] long-term lease," and there was no argument "that [the party] had breached the lease in any way"]; *Super 7 Motel Associates*, *supra*, 16 Cal.App.4th at p. 544 [involving alleged fraud by seller and broker arising out of failure to disclose certain information to induce buyer to purchase property].)  Accordingly, Japantown respondents' argument concerning the generally tortious nature of fraud claims does not alter our conclusion that it is "unclear" whether SJN's particular breach of fiduciary duty claim here arises in contract or tort.

Fourth, Japantown respondents argue that SJN's request for punitive damages, a tort remedy, demonstrates "[t]hat SJN understood it was making a tort claim" via the breach of fiduciary duty cause of action.  Japantown respondents cite a number of cases in support of their assertion that "the remedy requested can be an important factor" in the "on a contract" analysis.  Even assuming, however, that we should treat SJN's request for punitive damages as an "important factor," when considered in conjunction with the other allegations in the TAC, the punitive damages request is not enough to make it "clear" that SJN intended to pursue the breach of fiduciary duty claim in tort.

27

In sum, because we conclude that it is "unclear" whether SJN's voluntarily dismissed breach of fiduciary duty claim sounds in contract or tort, we must treat it as a claim "on a contract." (*See Amtower, supra,* 158 Cal.App.4th at p. 1602; *Kangarlou*, *supra*, 128 Cal.App.4th at pp. 1178−1179.) As a result, section 1717, subdivision (b)(2) bars any prevailing party fee award, and we therefore reverse the trial court's order awarding fees to Japantown respondents.

## DISPOSITION

The court's October 25, 2019 order awarding attorney fees is reversed.  Respondents Miraido Corporation's and Uchida's request for attorney fees on appeal is denied.  Appellant San Jose Nihonmachi, LLC is awarded its costs on appeal.

NOT TO BE PUBLISHED.

                                        ROTHSCHILD, P. J.

We concur:


BENDIX, J.



WEINGART, J.

29